IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| ETHEL HANGER, | ) | |
| | ) | |
| Plaintiff, | ) | 4:05 CV 3117 |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| JOANNE B. Barnhart, Commissioner, | ) | MEMORANDUM AND ORDER |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

   Plaintiff seeks reversal of the decision of the Commissioner on plaintiff's claim for Social Security Supplemental Security Income ("SSI") benefits.  Plaintiff filed applications for SSI on August 30, 2002.  Her application was denied both initially and upon reconsideration, and she requested a hearing before an Administrative Law Judge ("ALJ").  The ALJ held a hearing on April 28, 2004 and took evidence, but then continued the hearing until July 21, 2004 in order to allow plaintiff to submit additional evidence.  In an opinion of October 15, 2004 the ALJ denied benefits, finding plaintiff not disabled as defined in the Social Security Act, 42 U.S.C. §§1602 and 1614(a)(3)(A).  Plaintiff then took her claim to the Appeals Council, which also rejected it and affirmed the ALJ's decision.

   Plaintiff now contends that the findings of the ALJ were not supported by substantial evidence in concluding that plaintiff was not disabled.  Specifically, plaintiff argues:

   1. Plaintiff's "many limitations" when combined do constitute
      grounds for finding her disabled under the Act.

    2.   The evidence on which the ALJ relied was not substantial, because:

        a. The ALJ relied more on the medical opinions of an expert witness who had reviewed plaintiff's file, than on the opinions of her treating psychiatrist; and

        b.  The ALJ wrongly concluded that plaintiff was not credible.

    3.  The ALJ did not correctly weigh the severity of all of Ms. Hanger's limitations conjunctively, because when properly considered, the combination of plaintiff's four severe impairments with her exertional impairments from knee and back pain should result in a finding of disability.

Plaintiff's Brief, Filing 16.

## BACKGROUND FACTS

At the time of her application on August 30, 2002 Plaintiff was 33 years of age (dob 12/19/1969). She had essentially no work history. She had been the victim of several rapes as a minor. She had been convicted of felony sexual assault on a child and had served approximately 2 ½ years (11/24/1997 - 5/5/2000) in custody at the Nebraska Center for Women, Nebraska Department of Correctional Services. LRC Admission Note, May 12, 2000, AR 303.[1] She obtained a GED while she was incarcerated, having previously dropped out of school at the end of eighth grade at age 15 when she became pregnant. She married at age 15, a marriage that lasted fourteen years and produced five children, two of whom died and the

---

[1] "AR" refers to "Administrative Record." The number following "AR" is the page cited.

other three of whom were taken from her, parental rights having been relinquished by both herself and her husband.  Upon her release from prison, approximately May 5, 2000, she was immediately involuntarily committed to the Lincoln Regional Center ("LRC"), a state psychiatric treatment facility, by the Mental Health Board of York County, Nebraska, which found her to be mentally ill and dangerous to herself and/or others.  She remained involuntarily committed to LRC at the time she submitted her application for SSI.

She began having symptoms of Bipolar Disorder in "about 1995." She was diagnosed with the condition by her general physician in approximately 1997-98, and he prescribed Lithium, which she took for a number of years.  She was also prescribed Wellbutrin and Depakote for the 1 ½ years prior to her arrival at LRC.  AR 306. At the time of her admission to LRC, however, she was not taking any psychotropic medications.  Id.

Plaintiff's medical history also includes several physical problems:  Knee sprain and degenerative joint disease in the right knee, a severe ankle sprain, hypertension, hypothyroidism, asthma, and obesity.

DISCUSSION

The Commissioner's decision must be affirmed if it is supported by substantial evidence on the record as a whole. "Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support the Commissioner's conclusion." Maresh v. Barnhart, 431 F.3d 1073, 1074 (8th Cir. 2005); Goff v. Barnhart, 421 F.3d 785, 789 (8th Cir. 2004) (quoting Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir.2000)).  The court must consider the whole record, including evidence that supports as well as detracts from the Commissioner's decision; reversal is not warranted simply because some evidence may support the opposite conclusion.  Id.

Furthermore, "[Courts] defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005) citing Gregg v. Barnhart, 354 F. 3d 710, 714 (8th Cir. 2003).  A court may not reverse the Commissioner's decision merely upon a finding that it would have reached a contrary conclusion.  Id.  "If, after review, [the court] find[s] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [it] must affirm the denial of benefits."  Id. (citation and internal quotation marks omitted).  Vandenboom v. Barnhart, 421 F.3d 745, 749 (8th Cir. 2005).

The Commissioner is required by regulation to perform a five-step process in evaluating claims of disability.  See Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) (citing 20 C.F.R. §§ 404.1520(a)-(f)).[2]

> During the five-step process, the ALJ considers (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.  Eichelberger v. Barnhart, 390 F.3d 584, 590 (8th Cir. 2004) (citation omitted).  "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.  The fourth step in this analysis requires the ALJ to determine a claimant's [Residual Functional Capacity]."  Id. at 590-91.  "A disability claimant has the burden to establish her RFC."  Id. at 591 (citing Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004)).  If the claimant establishes her inability to do past relevant work, then the burden of proof shifts to the

---

[2] The reference is to Social Security Disability claims; the same test is used for SSI applicants.  20 CFR § 416.920.

4

>       Commissioner.  Id. "The Commissioner must then prove,
>       first that the claimant retains the RFC to do other kinds
>       of work, and, second that other work exists in
>       substantial numbers in the national economy that the
>       claimant is able to perform." Id. (citing Nevland v.
>       Apfel, 204 F. 3d 853, 858 (8th Cir. 2000)).  Moreover,
>       "[t]he burden of persuasion to prove disability and to
>       demonstrate RFC remains on the claimant, even when the
>       burden of production shifts to the Commissioner at step
>       five."  Stormo, 377 F.3d at 806.

Goff v. Barnhart, 421 F. 3d at 789-790.  "While a 'deficiency in opinion-writing is not a sufficient reason to set aside an ALJ's finding where the deficiency [has] no practical effect on the outcome of the case,' inaccuracies, incomplete analyses, and unresolved conflicts of evidence can serve as a basis for remand." Draper v. Barnhart, 425 F. 3d 1127, 1130 (8th Cir. 2005); Reeder v. Apfel, 214 F. 3d 984, 988 (8th Cir. 2000); Boyd v. Sullivan, 960 F. 2d 733, 736 (8th Cir. 1992).

   In this case, since plaintiff had no prior work history after her alleged onset date, July 31, 2002, the ALJ proceeded to Step Two.  The ALJ found plaintiff to have four "severe" impairments: Bipolar disorder; borderline intellectual functioning; personality disorder, mixed; and paraphilia, not otherwise specified.  AR 20. Although the ALJ found that plaintiff had right knee patellofemoral syndrome with chondromalacia patella, and acknowledged that her doctor had opined that it was "difficult to cure," the ALJ did not find this condition to be "severe."  Regarding plaintiff's right knee strain in April, 2002, the ALJ found no degenerative changes. Plaintiff's right ankle strain in January, 2004 was found not to meet the twelve-month duration requirement.  The ALJ discounted plaintiff's claim of back problems, as there was no medical evidence, id., and concluded that these problems would interfere only minimally, if at all, with plaintiff's ability to perform "basic work-related functions."  Id.  Plaintiff does not contest the ALJ's conclusions at Step Two.

At Step Three the ALJ found that plaintiff's mental impairments have caused her only "mild restriction of activities of daily living; moderate difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, or pace[3]; and no episodes of decompensation of extended duration."  The ALJ therefore concluded that plaintiff's impairments did not meet or equal those in the Listing of Impairments,(Appendix 1, Regulations No. 4).  AR 21.  Acknowledging the shift in burdens of proof, the ALJ then analyzed the effects of plaintiff's impairments and whether she has the Residual Functional Capacity to perform any jobs existing in significant numbers in the national economy, Steps Four and Five.  After considering the relevant factors, the ALJ found the plaintiff not disabled.

Plaintiff challenges the ALJ's findings and conclusions in several respects leading to the ALJ's conclusion that plaintiff was not disabled.  First, plaintiff argues the ALJ erred in relying more on the medical opinions of an expert witness who had reviewed plaintiff's file, than on the opinions of her treating psychiatrist.  The psychiatrist's opinion, expressed in several letters provided to the Social Security Administration and the ALJ, was that "The patient is considered disabled to hold, seek or secure any full-time employment at this time.  Medication is a medical necessity.  Length of disability indefinite."  Letter of 1/11/05, AR 418.  The ALJ acknowledged Dr. Roy's letters to this effect dating back to April, 2002, but stated, "Clearly, this is an issue reserved to the Commissioner...and Dr. Roy's conclusion has not been given great weight.  The ALJ explained that plaintiff had not supplied evidence in the form of progress notes supporting that

---

[3] The medical expert testified that the plaintiff suffered "marked" difficulties in "concentration, persistence, and pace." AR 490; however, the ALJ's findings place the severity at "mild." AR 27.

conclusion,[4] despite plaintiff's report of seeing him monthly, even to the date of the first hearing.  The ALJ also noted an inconsistency in the records, in that on the same day, April 30, 2003, Dr. Roy had authored documents rating plaintiff's "GAF" ("Global Assessment of Functioning") at a 65 (AR 335-37) and an 85 (AR 201-04).  The record also contains an evaluation on December 31, 2002 in which he had rated her GAF at 62.  AR 210-13.

These inconsistencies were emphasized during the second hearing before the ALJ.  Dr. Susan Pelzer, a clinical psychologist[5] and adjunct faculty member of the Fielding Graduate Institute School of Psychology, testified by telephone as a medical expert for SSA.  Having previously reviewed the records of plaintiff's claim and hearing plaintiff's testimony at the second administrative hearing, (AR 477-483), Dr. Pelzer testified that the records did not explain plaintiff's change in diagnosis from Bipolar 1 to Bipolar 2, particularly when a contemporaneous note indicated that her psychiatric symptoms were controlled with medication; the records received from the LRC did not document any panic attacks, contrary to plaintiff's testimony at the hearing; she was "concerned" that the plaintiff requested an increase of her Trileptal medication and there was no contemporaneous record of the psychiatrist evaluating her before ordering it, causing her to infer--from that as well as a 1994 record indicating plaintiff was then "abusing the prescription drugs"--that plaintiff was perhaps requesting more drugs because she was "abusing them"; that

---

[4] It was not for the want of requests.  The record contains several pre-hearing notes from the ALJ to plaintiff's counsel requesting progress notes, and also several letters from counsel to the doctor requesting them.  In addition, the ALJ–on her own motion–continued the hearing specifically to allow plaintiff to obtain additional medical progress notes or other documentation of Dr. Roy's treatment.  AR. 457, 462.

[5] The government's brief misidentifies her as an "M.D." However, her curriculum vitae sets out her qualifications and clearly does not mention any medical school degrees.  AR 72-77.

plaintiff's headaches, low energy, sleep disturbance, and reduced ability to concentrate were all side effects of the "medication she's taking";[6] that the medical records did not support a diagnosis for paraphilia; the medical record reflected that in March, 2004 plaintiff told her counselor she was well enough to leave treatment, when a month earlier she had reported near daily debilitating "flashbacks" to her being raped;[7] that plaintiff's early (1994) diagnosis of bipolar disorder was probably not accurate, and it had not been justified by later psychological examinations but instead merely carried on because of her history, (AR 483-489); and Dr. Roy's records were internally inconsistent and not supported by appropriate documentation, leading to the inference that he was "advocating" for more medication for plaintiff or for her to be released from LRC.  AR 493.

Regarding plaintiff's conditions and whether they met the requirements for disability, Dr. Pelzer opined:

> Plaintiff does have a personality disorder as described in the Listing of Impairments, § 12.08, 20 CFR 404, Subpt. P.

---

[6] Plaintiff testified at the second hearing that she was taking Trileptal, Geodon, Klonopin, Levoxyl, Tenormin, Naprosyn, albuterol inhaler, and nebulizers, Advair.  AR 472.  The medical expert did not elaborate on which of the side effects corresponded with which medicine.

[7] "...panic attacks are treatable.  So I don't understand her having them for so long, other than it is brought on by the combination of her medications.  Also, she may – there's a possibility she misinterprets her anxiety if she's taking her asthma medication.  That sometimes brings on a sense of nervousness and anxiety.  And if she misinterprets that and takes an extra Klonopin, then she's actually brining [sic] on the panic attack because she's taking too much Klonopin.  So that all requires more medical attention, as well as psychological attention, so for her to have left therapy and then still report how severe her symptoms are doesn't make sense to me."  AR 486-87.

Appendix 1,[8] and plaintiff's impairment met the "subpart B" severity criteria, in that plaintiff suffered from "marked difficulties in maintaining concentration, persistence, or pace"; however, in her opinion, plaintiff did not meet any of the "subpart A" criteria,[9] and, since both "A" and "B" criteria must be met, she was not disabled as defined.  AR 489-493.  Further, Dr. Pelzer testified that plaintiff could perform "routine, repetitive-type tasks" with supervision so long as she stayed on her medication and worked in a quiet area with little social interaction, and plaintiff could adequately deal with changes in the work setting or make decisions independently, so long as they were simple decisions and routine changes.  AR 491.

Plaintiff argues that the conclusions of the medical expert were given too much weight, and those of the treating physician were given too little.  SSA regulations require that the agency give more weight to opinions of treating physicians when those

---

[8] Although the ALJ inquired of the medical expert regarding the possibility of two other listed impairments—§12.04, Affective Disorders, and §12.06, Anxiety Related Disorders—their discussion centered on §12.08 alone.  AR 489-90.  The ALJ's findings do not address whether the plaintiff has the other two impairments.  AR 27.

[9] Subpart A is as follows:
"A.  Deeply ingrained, maladaptive patterns of behavior associated with one of the following:
   1.  Seclusiveness or autistic thinking; or
   2.  Pathologically inappropriate suspiciousness or hostility; or
   3.  Oddities of thought, perception, speech, and behavior; or
   4.  Persistent disturbances of mood or affect; or
   5.  Pathological dependence, passivity, or aggressivity; or
   6.  Intense and unstable interpersonal relationships and impulsive and damaging behavior."

9

opinions are supported by medical evidence.  20 C.F.R. §§ 404.1512(e), 416.912(e).  Again the Goff case is instructive:

> Goff contends the ALJ, in determining her RFC, erred by not giving proper weight to the opinions of her long-term treating physician and her treating psychiatrist.  "[A] treating physician's opinion is given 'controlling weight' if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence."  Reed [v. Barnhart], 399 F. 3d 917, 920 (quotations and citations omitted).  "A treating physician's opinion 'do[es] not automatically control, since the record must be evaluated as a whole.'"  Bentley v. Shalala, 52 F. 3d 784, 786 (8th Cir. 1995).  An ALJ may "discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions."  Prosch v. Apfel, 201 F. 3d 1010, 1013 (8th Cir. 2000).

Goff v. Barnhard, 421 F. 3d at 790.

It is troubling, to say the least, that the opinions of a non-examining clinical psychologist would trump those of a long-term treating psychiatrist who has met with the plaintiff on many occasions, prescribed medications and reviewed other doctors' prescriptions for her, and evaluated her progress with other professionals in a psychiatric hospital over an extended period of time.  Dr. Pelzer did not testify at all on how she came to be knowledgeable about the plaintiff's many prescription drugs, even though she is not a physician, nor, without seeing plaintiff or questioning her, and without any stated expertise on pharmacology, how she concluded that plaintiff's problems are significantly, if not totally, the result of side effects of these medicines.  She also did not reveal a medical basis for her disagreement with Dr. Roy's diagnosis of bipolar disorder, nor for her own diagnosis of an anxiety disorder.  Her conclusions about the reasons for inconsistencies in Dr. Roy's records are also speculative; there

10

was no direct evidence on that subject.  Likewise, no evidence supports her inference that plaintiff might be requesting higher doses of medication in order to "abuse" it to modify her mood.  In these respects Dr. Pelzer's opinions are not "substantial evidence."

To be sure, Dr. Roy's records are cryptic, inconsistent, poorly documented, and generally do not communicate anything about his reasons for the treatment mode he adopted; this, despite his longstanding treating relationship with plaintiff.  It may well be proper to impugn his conclusions on that basis.  However, disregarding his opinions does not establish substantial evidence for Dr. Pelzer's.  To credit other conclusions for which there also is no, or at least precious little, supporting evidence does not appear to follow the requirements of the regulations.  See, generally, 20 CFR §416.927.

What else could the ALJ have done to obtain a complete record of plaintiff's treatment history?

> While the ALJ has an independent duty to develop the record in a social security disability hearing, the ALJ is not required "to seek additional clarifying statements from a treating physician unless a crucial issue is undeveloped." Stormo, 377 F. 3d at 806.  The Commissioner's regulations explain that contacting a treating physician is necessary only if the doctor's records are "inadequate for us to determine whether [the claimant is] disabled" such as "when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."  20 C.F.R. §§ 404.1512(e), 416.912(e).

Goff, 421 F. 3d at 790.  This is a case in which the exception might apply.  See, Bowman v. Barnhart, 310 F.3d 1080, 1085 (8th Cir. 2002).  However, the ALJ did seek additional information and gave plaintiff additional time in which to accumulate and submit it.

11

Short of issuing a subpoena to the treating physician, the ALJ could have done nothing more.  Under these circumstances, the ALJ was justified in concluding that in fact, there were no additional records to be submitted.

The ALJ gave good reasons for not giving controlling weight to Dr. Roy's unsupported opinions, stating that inconsistencies in the medical record as well as Dr. Roy's failure to document objective medical evidence to support plaintiff's subjective complaints justified giving his opinions less weight.  See, Prosch v. Apfel, 201 F. 3d 1010, 1013 (8th Cir. 2000) ("We [will] up[ho]ld an ALJ's decision to discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." (citations and internal quotation marks omitted)). Vandenboom v. Barnhard, 421 F. 3d 745, 749-750 (8th Cir. 2005), rehearing en banc denied, 412 F. 3d 924 (2005).  The record supports the ALJ's conclusion.

Plaintiff also challenges the ALJ's decision because it finds the plaintiff's testimony and records not credible.  However, the ALJ's opinion notes several inconsistencies between plaintiff's testimony and her treatment records.  The ALJ found that plaintiff's decision to leave treatment at a time when she professed to have serious and frequent panic attacks was inconsistent; that her testimony of panic attacks was not corroborated in her treatment records; and that her traveling to St. Louis and to Grand Island, Nebraska by bus to provide care for her ailing aunt and her mother, respectively, demonstrated that she was able to function in the outside world and to perform light work such as housekeeping, cooking, and assisting her aunt with showering.  The ALJ concluded plaintiff's activities instead supported a finding of substantial residual functional capacity.

AR. 24.  The ALJ's decision to not believe plaintiff's testimony is supported in the record.[10]

Finally, plaintiff contends that the ALJ failed to adequately consider all of her ailments conjunctively--her four "severe" non-exertional impairments and her non-severe exertional impairments of the knee and back pain--and their combined disabling effects.  The ALJ discounted plaintiff's back and knee problems as not supported in the treatment records submitted.  This finding was supported by the record.  In addition, at the first hearing the ALJ asked the vocational expert whether the claimed physical impairments if found to be true, would change his testimony about the number and type of jobs available; his answer was that she could still do "more than half of unskilled, light and sedentary work."  AR. 459-61.  The ALJ did consider the combined effects of plaintiff's mental and physical impairments and found that she still had the RFC to engage in light, sedentary work.  AR. 27.  Substantial evidence supports the ALJ's conclusion.

I do not find substantial evidence supporting the opinions of Dr. Pelter.  Nor do I find substantial evidence supporting a finding of disability.  The plaintiff bears the burden of persuasion in determining disability.   Stormo v. Barnhart, 377

---

[10] Performing light household chores, alone, is not evidence of ability to work "day in and day out in the sometimes competitive and stressful conditions in which real people work in the real world," Draper v. Barnhart, 425 F. 3d 1127, 1130-31 (8th Cir.  2005) quoting McCoy v. Schweiker, 683 F. 2d 1138, 1147 (8th Cir. 1982) (en banc), that is, evidence of performing general housework does not preclude a finding of disability.  Rainey v. Dep't of Health & Human Servs., 48 F. 3d 292, 203 (8th Cir. 1995).  These cases, though, were claims of physical, not mental disability; here, the ALJ discounted plaintiff's physical ailments, so the effective issue is whether the plaintiff, in doing light housework, had the ability to prevent, withstand, or cope with panic attacks and debilitating mood swings.  The record supports a conclusion that she can.

F.3d 801, 805 (8th Cir. 2004); Cf. Pope v. Bowen, 886 F. 2d 1038 (8th Cir. 1989)[11]. Plaintiff has failed to meet her burden of proving she is disabled.

IT THEREFORE HEREBY IS ORDERED:

1. Plaintiff's Motion for Summary Judgment, Filing 15, is denied.

2. The decision of the Commissioner of the Social Security Administration is AFFIRMED.

3. The plaintiff's complaint is dismissed with prejudice, each party to bear its own costs.


DATED February 6, 2006

BY THE COURT:

_s/ David L. Piester_
United States Magistrate Judge

---

[11] The ALJ's failure to expressly shift the burden of proof was reversible unless evidence was so strong against plaintiff that shifting would not have changed the outcome; plaintiff's treating physicians' records were inconsistent and undocumented, but not so strongly as would definitely not change outcome, so the case was remanded.